IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | | |
|---|---|---|
| Laura A. Schaefer, | ) | Civil Action No. 4:23-CV-1540-SAL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| City of Myrtle Beach, SC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Laura A. Schaefer, by way of her Complaint in the above-captioned action, would allege and show unto this Honorable Court the following:

## I.  Parties, Jurisdiction, and Venue

1.     Plaintiff is a citizen and resident of Horry County, South Carolina.

2.     Upon information and belief, Defendant, City of Myrtle Beach, SC, is a municipal corporation or governmental or political subdivision or entity located within Horry County, South Carolina, which is organized and exists pursuant to the laws of the State of South Carolina, with the legal capacity to sue and be sued in its own name.  Defendant operates a City Police Department, with Sworn Class I police officers who are given authority to act under color of state law.

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, because this action is based, in part, on disability discrimination under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.

4.     Plaintiff has exhausted all administrative remedies required in employment discrimination actions under the ADA.  Plaintiff filed a timely charge of employment discrimination

against Defendant with the Equal Employment Opportunity Commission ("EEOC"), dual filed with the South Carolina Human Affairs Commission, on or about April 26, 2021, within three hundred (300) days of the commission of the unlawful employment practices alleged herein. Plaintiff received a "Notice of Right to Sue" letter from the EEOC on or about January 17, 2023. This suit is being filed within ninety (90) days of the receipt of that letter.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant does business in this judicial district and division, and the unlawful employment practices giving rise to Plaintiff's claims were committed, at least in part, within this judicial district and division.

## II.  Facts

6.     Plaintiff started working for Defendant's Police Department as a Telecommunications Officer on or about July 5, 2019.

7.     Plaintiff had previously been diagnosed with an Arnold Chiari Malformation in 2004 or 2005, which is a congenital defect where the opening at the base of the skull is too large, which can cause the lower portion of the brain to encroach on the spinal cord. Plaintiff's physical impairment caused her to suffer from a history of seizures, balance issues, headaches, neurological problems, and other complications. Plaintiff has a history of at least six brain surgeries and one spinal cord surgery because of the Chiari Malformation.

8.     During her physical for the job with Defendant, Plaintiff received a note from her neurosurgeon, who cleared her for the position with Defendant, after a complete physical in-person in New York. Plaintiff provided the note from her neurosurgeon to Defendant's doctor who was conducting the pre-employment physical.

9.     Plaintiff began work with Defendant in early July 2019, shortly after passing her

2

physical, starting with shadowing other communications officers and answering phone calls for the police department.

10.    Defendant's Police Department used two different devices in the communications department: one was a large black phone with heavy hand-set, and the other was a much lighter head-set that was used by radio dispatch.

11.    Plaintiff was originally assigned to work 12-hour shifts. She discovered that towards the end of each shift, she was struggling to hold the heavy phone, as she often had to cradle the hand-set between her ear and shoulder while she was typing on the computer or performing other tasks. The awkward position of her neck aggravated the symptoms from her Chiari Malformation, which caused her to have severe headaches, nausea, and muscle spasms.

12.    Plaintiff repeatedly requested that she be allowed to use the lighter head-set, rather than the much heavier hand-set, as an accommodation for her disability. Plaintiff made the accommodation request to her immediate supervisor, Cpl. Lauren Farrar, and to Cpl. Farrar's supervisor, Sgt. Jennifer Hennigan. Plaintiff even offered to purchase a head-set with her own money, after Defendant's IT employees informed her that a head-set would be compatible with the Department's other communication equipment. Plaintiff's supervisors refused to allow her to work with a head-set.

13.    Plaintiff then requested to be reassigned to part-time hours or to float or fill-in. After one of the part-time employees decided not to come back to work and her position came open, Plaintiff submitted an application for that part-time position, which application was denied immediately.

14.    Plaintiff also requested that her job duties be re-assigned, as the Department had previously done for another Communications Officer (Michelle Harvey), who was allowed to handle only fire department calls and NCIC responsibilities, but not the police radio, after she (Ms. Harvey) had difficulties with being assigned to cover the police radio.  All of Plaintiff's requests for accommodation were denied.

15.    On or about July 1, 2020, Plaintiff received a 9-1-1 call for a suspected cardiac arrest on a young man in his mid- to late-twenties.  Plaintiff followed the protocols as she had been trained to do, to determine whether this was a possible overdose situation because of the young age of the individual involved.  She decided to send police and first responders to the scene and to transfer the call to Horry County for EMS dispatch.  Plaintiff stands by the decisions she made in handling the call and believes that her actions were appropriate and consistent with her training.

16.    A supervisor in the Communications Department who overheard the call in question made a complaint about how Plaintiff had handled the call.  Shortly thereafter, Captain Knipes and Sgt. Hennigan met with Plaintiff, and Captain Knipes informed her that she was being taken off the phone and assigned to handle only the complaint line for the Department.  During the meeting, Plaintiff became emotionally upset and verbally offered to resign her position.  Captain Knipes left the meeting rather abruptly, within a couple of minutes, because he said that his phone was "blowing up."  He told Sgt. Hennigan to "finish up" the meeting with Plaintiff.

17.    After Captain Knipes left the meeting, Plaintiff continued to speak with Sgt. Hennigan, with whom Plaintiff had developed a strong rapport.  Towards the end of the meeting, Plaintiff told Sgt. Hennigan that she was going to take the rest of the day, review the Department's policies, and think about what she wanted to do with respect to her employment.

4

18.     Later that afternoon, several of Plaintiff's co-workers sent her text messages to notify her that an email had just gone out within the Department stating that she had been separated from the Department.  When Sgt. Hennigan called Plaintiff back to ask her to return her uniforms, Plaintiff stated that she never had a chance to get back with them about her decision, but that she wanted to remain an employee of the Department.  Sgt. Hennigan stated that Captain Knipes had already accepted her verbal resignation from the very beginning of the previous meeting.

19.     Plaintiff then attempted to call Defendant's Human Resources Department about her situation, but they had already left the office for the July Fourth Weekend.  When she finally reached the Human Resources Department after the Holiday, Plaintiff repeated that she had rescinded her verbal offer to resign.  Based on her conversations with the Human Resources manager, Plaintiff decided to pursue a grievance about the separation of her employment.  The first grievance hearing had to be rescheduled, because Plaintiff was ill and was only given one day's advance notice of the hearing.  When Plaintiff's grievance hearing was ultimately held on August 19, 2020, the entire Communications Department showed up for the hearing, which was highly unusual because only a couple of them were actually called as witnesses during the hearing.

20.     By letter of September 15, 2020, then-City Manager, John Pedersen, informed Plaintiff that her grievance was denied, stating that a resignation is not a grievable employment action according to Defendant's policies.

21.     At all times relevant hereto, Plaintiff was a good and faithful employee of Defendant and performed her job at an acceptable level.

22.     At the time of Plaintiff's discharge from employment with Defendant, she was earning a base salary of Thirty-five thousand, eight hundred and nineteen dollars ($35,819.00), plus

benefits, including life insurance, dental insurance, health insurance, paid vacation, and state retirement.

### FOR A FIRST CAUSE OF ACTION
#### (ADA–Employment Discrimination Based on Disability)

23.    Plaintiff repeats and realleges Paragraphs 1-22 as if restated herein verbatim.

24.    Plaintiff has a "disability" within the meaning of the ADA, 42 U.S.C. § 12102(2), because she has a physical impairment that substantially limits one or more of her major life activities; because she has a record of such impairment; and/or because Defendant regarded her as having such an impairment.

25.    Plaintiff is a "qualified individual with a disability" within the meaning of Section 101(8) of the ADA, 42 U.S.C. § 12111(8), because she could, with or without reasonable accommodation, perform all of the essential functions of her position with Defendant.

26.    Defendant is a covered "employer" within the meaning of the ADA.  Upon information and belief, Defendant employs or has employed in excess of 500 employees at all times relevant to this Complaint.  Defendant is a "person" within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates the definition of "person" from Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(a), which expressly includes governments, governmental agencies, and political subdivisions.  Defendant is engaged in an "industry affecting commerce" within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates the definition of "industry affecting commerce" from Title VII, 42 U.S.C. § 2000e(h), which expressly includes "any governmental industry, business, or activity."

27.    Defendant discriminated against Plaintiff because of her disability in the following

particulars: by failing and refusing to accommodate her disability despite repeated requests by Plaintiff; by treating her less favorably than one or more other, similarly situated employees who did not have a disability; by immediately rejecting Plaintiff's application for a part-time position, despite the fact that Plaintiff was qualified for such position; by fabricating a false reason to take disciplinary action against Plaintiff or to assign her undesirable and menial job duties; by purporting to accept Plaintiff's offer to resign after Plaintiff indicated at the end of the meeting that she wanted to take a day to give her employment situation additional thought; by refusing to allow Plaintiff to rescind her oral offer to resign in violation of the County's own policies and procedures regarding resignations; by sending the entire Communications Department to the grievance hearing in an effort to intimidate Plaintiff into dropping her grievance or otherwise to influence the testimony of other witnesses during the hearing; and, ultimately, by upholding Plaintiff's separation of employment from the City.

28.     Defendant had knowledge of Plaintiff's disability and intentionally and willfully discriminated against her based on that disability in direct violation of the ADA.

29.     As a direct and proximate result of Defendant's deliberate, intentional, reckless, and malicious discrimination against Plaintiff, she has suffered, and continues to suffer, injuries including lost wages and other job-related benefits, lost retirement service credit, lost earning capacity, mental and emotional anguish, humiliation, loss of enjoyment of life, and other economic and non-economic damages.

30.     Plaintiff is entitled to an award of compensatory damages; back pay, front pay, and interest thereon; lost employment benefits; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation)

31.     Plaintiff repeats and realleges Paragraphs 1-30 as if restated herein verbatim.

32.     Plaintiff engaged in protected activity under the ADA by complaining about discrimination and by requesting that Defendant take reasonable steps to accommodate her disability, including allowing her to use a hand-set, rejecting Plaintiff's offer to purchase the hand-set with her own funds, and reassigning Plaintiff to an open part-time position for which she applied and was qualified, and reassigning some of Plaintiff's job duties, as had been done for at least one other employee.

33.     Defendant retaliated against Plaintiff because she engaged in the protected activity described above in the following particulars: by failing and refusing to accommodate her disability despite repeated requests by Plaintiff; by treating her less favorably than one or more other, similarly situated employees who did not have a disability; by immediately rejecting Plaintiff's application for a part-time position, despite the fact that Plaintiff was qualified for such position; by fabricating a false reason to take disciplinary action against Plaintiff or to assign her undesirable and menial job duties; by purporting to accept Plaintiff's offer to resign after Plaintiff indicated at the end of the meeting that she wanted to take a day to give her employment situation additional thought; by refusing to allow Plaintiff to rescind her oral offer to resign in violation of the County's own policies and procedures regarding resignations; by sending the entire Communications Department to the grievance hearing in an effort to intimidate Plaintiff into dropping her grievance or otherwise to influence the testimony of other witnesses during the hearing; and, ultimately, by upholding Plaintiff's separation of employment from the City.

34.     As a direct and proximate result of Defendant's deliberate, intentional, reckless, and malicious retaliation against Plaintiff, she has suffered, and continues to suffer, injuries including lost wages and other job-related benefits, lost retirement service credit, lost earning capacity, mental and emotional anguish, humiliation, loss of enjoyment of life, and other economic and non-economic damages.

35.     Plaintiff is entitled to an award of compensatory damages; back pay, front pay, and interest thereon; lost employment benefits; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

**WHEREFORE**, having fully set forth her causes of action against Defendant, Plaintiff respectfully requests the following relief:

A.     Compensatory damages for economic and non-economic injuries;

B.     Equitable relief, including back pay, and all benefits and interest thereon;

C.     Reinstatement or front pay, with all lost or reduced benefits;

D.     Pre-judgment interest;

E.     Enhancement to Plaintiff's actual, economic damages to account for any negative income tax consequences Plaintiff might sustain from receiving a damages award in a lump sum;

F.     Attorney's fees, expert fees, and costs in bringing this action; and

G.     Such other relief as this Court may deem just and proper.

*     *     *

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,


 s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina 29605
Telephone: (864) 232-5870
Fax: (864) 241-1386
E-mail: drothstein@rothsteinlawfirm.com

Attorney for Plaintiff, Laura A. Schaefer

April 14, 2023

Greenville, South Carolina.